UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED by _____ D.C.
AUG 24 2017
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

DR. KURT MARIN, MAURICE SYMONETTE

Plaintiffs

Vs.

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF NOMURA HOME EQUITY LOAN INC. HOME EQUITY LOAN TRUST, SERIES 2007-1

ALBERTEILLI LAW, ASHLEIGH C. MCKENZIE, ESQ.

Defendant(s)
_____/

COMPLAINT

**WRONGFUL FORECLOSURE BY
HSBC BANK USA N.A. ASSOC.**

**Jury trial requested**    1). WRONGFUL FORECLOSURE

**INDEX**    2). BANKRUPTCY STAY VIOLATION
**INTRODUCTION**

    3). CLERK DESTROYS FILES

JURY TRIAL

DEMAND CLAIM OF RELIEF

1

FIRST CAUSE OF ACTION-WRONGFUL FORECLOSURE
SECOND CAUSE OF ACTION-BANKRUPTCY STAY VIOLATION
THIRD CAUSE OF ACTION- CLERK DESTROYED FILES

### PARTIES AND JURISDITION

**1)**. Plaintiff Kurt Marin is a resident of Miami Dade County and the prior owner of the single Family residence located at 10290 SW 58THST Miami, Dade County, in the state of Florida the legal description is: 2954 40 1.15 AC Miller Drive Estates PB 47-37 N ½ of W ½ of Tr 23 lot Size Irregular or 17348-3388 0996 1 coc 25872-3780

**2)**. Plaintiff Maurice Symonette is a resident of Miami Dade County and prior owner Of the single family residence located at 10290 SW 58th st. Miami, fl. 33173

**3)**. Defendant HSBC BANK USA National Association, As Trustee For The Holders Of Nomura Home Equity Loan, INC. Home Equity Loan Trust Series 2007-1 a New York Corporation License to do Business in Florida, is in Aquire of certain assets Claims to be the, Note Holder beneficiary or servicer for investment trust.

**4)**. Defendant Albertelli Law / Attn: Ashleigh C. McKenzie Esq. Attorney For HSBC BANK USA, N.A. 633 SE 3rd Ave. Ft. Laud. Florida 33301.

### JURY TRIAL DEMANDED

**6)**. Plantiff requests a jury trial on all issues

### CLAIM OF RELIEF

2

The Real K K K Slave Master Revealed
& are the Cherokee Indians W O W !-
-Reason Trump ran for President !!
https://youtu.be/giDIB-pykwk

{Go to numbered reference page for}
{proof of this info on Gods2.com # A}

White Gentiles inherited LIES, Isa.16:19. The Lie is Gentiles were the Slave Masters Cherokee were & are the Slave Masters Rev.12:7-9. (r.1).

1). Question: Are White Gentiles the starters of the KKK? Answer: No! Cherokee were the KKK!! (r.2)
2). Question: Are Cherokee's going to Hell?Answer: No! Everybody can be Saved but must Repent, Rev.7:9-13!

Sons of Perdition (Cherokees) must be REVEALED to make Black & White Unite 2Thess.2:1-6. Matt.25:32 . No Race or Political Wars or God Kills Earth by Fire 2Pet.3:6-15!!

OBAMA, CLINTON & AL FRANKEN etc. are Cherokee & Infiltrating Republicans McCAIN, JEFF FLAKE & ROMNEY etc. are White hidden MORMON/CHEROKEES acting like their Gentiles

A.) Question:Who are these WHITE & Red Cherokee?
B.) Answer: Cherokees are Phoenicians who are a group of 2 main (r.peoples
1. White Cherokees are Biblical Cursed White Canaanites (Canon) Slav or Peoples who came to the Americas calling themselves Phoenicians Incas & changed name to Cherokee!
2. Red Cherokees are disinherited Ishmael, Gen.19ch. Father of Arabs, Pakistanis & East Indians, (r.1).
White Canon & Red Ishmael Married together, Gen.36:1-5. called Hyksos,(Hagarenes Ps.83:1-9). When Murdering Canibalism was Discovered they ran from justice & changed their name to Egyptian then Philistines, next Babylonians, next Asians/Slavs (Red & White Indians) then Phoenicians, then came to the Americas & called themselves Inca&Aztec, in North America then called themselves the five Indian tribes: Cherokee, Seminole, Creek, Chickasaw & Choctaw Indians. All five tribes are the same peoples the Illuminati & Masons hidden from Justice So when I say Cherokee it's all five Tribes. The Real Slave Masters of Blacks, (r.8). Cherokees who look White Deceived the World into blaming White Gentiles for Slavery Rev.12:7-9. But YAHWEH's 1st. book called You are not a Nigger pg.29 paragraph 2 Reveals the Truth which is the real White people who had Blacks as Slaves were White Canaanites (Canon-Slavs) not White Gentiles who's totally different from Canaanites!!
Canaanites are Sons of Ham (Father of Africans) Grandson of Noah, Gen.10:6. Cannon Cursed White for disrespecting our father Noah Gen.9:18-28, (r.9).

White Gentiles were not the Black
Man's Slave Masters

1). Sir John Hawkins & his Ships were Cherokee/Creek Indians & had the first & only Ships of Slaves to Africa. His ship was called The Good Ship JESUS, (r.10).
2). Jefferson Davis President of Confederate Slave States, Confederate Generals Robert E. Lee, Albert Pike & Stand Waite, all Cherokee, (r.11).
3). John Ross Cherokee's Cheif was the Confederate Military fought to keep Blacks as Slaves, (r.12).
4). Asa Carter KKK Founder, (r.13). Judge Thomas Jone's Court office Where KKK was started, along with-
5). Richard Reed, Calvin Jones & James Crow 3 of the 6 White men that founded the KKK in 1866 in Polaski Tennessee on pg. 35, 2nd paragraph of Book White Power White Pride, Cherokee, (r.14).
6). They wore face covering Klan hats that looked like Indian T Pee Tents to tell each other that they are Indians while at the same time hiding that they are Cherokee.
7). Segregationist George Wallace, Bull O'Connor police who beat Martin Luther King's crowd at Alabama's bridge was Cherokee, (r.15).
8). Dem. Senator Robert Byrd was KKK Grand Wizard, Clintons & VP. Al Gore fought Civil Rights are Cherokee, (r.16).
9). Hillary had Slaves in Arkinsaaw Governor's Mansion & Bill signed Laws that put 1.2 mil. Black Men in Jail, Hillary called Black Men Super Predators & called Obama a Nigger. The Clinton's are Cherokee, (r.17, r.46, r.47 & r.48 google).
10). Infiltrating Republicans like Senator McCain, Jeff Flake & Susan Collins etc. are Cherokee Mormons who are 6% of the Republican Senate. The Mormons are Cherokee, (r.18).
11). Mormons created by a Cherokee named Joseph Smith, (r.19).
12.Obama the shape shifting mason who acts Black but is Cherokee, (r.20).

These Cherokees are killing Black Men & White Gentiles all over America. Example Police are Killed by Ishmaelite (Radical Islam Arabs, East Indians & Cherokees) who look Black but are really them & Black Men who are Killed unjustly by what appears to be white police are not Gentiles but are actually them, (r.50). So Black & Blue lives Matter. Remember every Riot originated with East Indians, Arabs,

**7).** Plaintiff's brings this action against HSBC BANK USA for Fraud and Wrongful Foreclosure by fraudulently selling Plaintiff's property at a Foreclosure sale knowing that they don't have any standing to make claims on the property because since January 31, 2007, HSBC BANK USA's Trust has been closed, that means they have been operateing illeagally on a closed trust, and a fraudulent assignment, HSBC has never presented the Original Note To the property and never will because they do not have the Note, even in Their complaint they admit they don't have the Note, and the Note was never submitted to the Real Estate Investment Trust at least within 90 days of the closing date as required by the PSA (Pooling and Servicing Agreement ) of the Prospectus Supplement. correspondence of communication to the Property is from attorney's from a firm called Albertelli Law who say that they are Attorney's for HSBC BANK USA Trust, they claim to represent HSBC BANK USAs Trust  They are representing a closed Real Estate Investment trust t and we have proof of this from the SEC website on the Prospectus reports concerng the trust that Albertelli Law claim to represent, they are attempting to Evict Plaintiffs to deprive Plaintiff's of their Residence Without any lawful claim to the property and  the Clerk Of the Court is in Violation for Assisting HSBC's  fraud by deliberately and illegally Destroying the File Documents  Violation of Florida Statue 119.11(4).

## FACTS

HSBC Bank committed fraud on the court it is against the law for HSBC as trustee

3

To Produce a foreclosure lawsuit on a loan trust that no longer exist, the property

As seen on **exhibit (A)** , shows an assignment of mortgage that was executed by

Loancity to (MERS) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,

INC. as (Nominee for Loan City), on 07/31/2012 the Loan of owner Kurt

Marin was assigned to HSBC BANK USA, NATIONAL ASSOCIATION AS

TRUSTEE FOR THE HOLDERS OF NOMURA HOME EQUITY LOAN , INC

HOME EQUITY LOAN TRUST, SERIES 2007-1 (herein "assignee")  in which

HSBC BANK USA, NA. ASSOC. AS TRUSTEE  no longer exist since

01/31/2007, which was the closing date of the trust **see exhibit B, page 6,** which is

the Prospectus Supplement from HSBC BANK USA Trust that was obtained from

SEC.gov, Which gives information from the Bloomberg Securities wherein Loans

Are recorded as  a security with  asset –backed Certificates.

**FIRST CAUSE OF ACTION**
**WRONGFUL FORECLOSURE: HSBC BANK USA HAS NO STANDING, CLAIMING**
**OWNERSHIP WHILE OPERATING ON A CLOSED TRUST**

HSBC BANK has no standing to conduct any actions at all on this said property This property was bought by Kurt Marin in August 28, 2006, **exhibit# A**, a complaint was entered in on the property on 7/25/2007, **see exb.# B1** and lis pendens followed and was entered on 8/01/2007, **exhibit # C** and although HSBC BANK USA NATIONAL ASSOCIATION AS TRUSTEE FOR THE HOLDERS OF NOMURA HOME EQUITY LOAN, INC., HOME EQUITY LOAN TRUST SERIES 2007-1  is named on the complaint as the plaintiff And also on the notice of Lis Pendens there is no legal documents or records any where in the files at that time indicating that their

4

had been a sell or transfer or assignment made to HSBC BANK USA NA. trust, even
though it was requested by owner and tenant Clyde Ward and Kurt Marin as seen
In **exhibit # D,** on the QWR (Qualified Written Request) but still defendants
Received no response from LoanCity or HSBC BANK USA NA. concerning
those records and documents were ever given to the owner, final Judgment was
Entered into files 1/25/2008 **see exhibit# E** , then plaintiffs put another request
for QWR qualified written request on 11/21/14, plea of nul tiel record <u>**see exhibit
D1**on docket</u>, but still no response from HSBC BANK USA NA., then all of a sudden
An assignment of mortgage comes up on 7/21/2012, signed and dated by (MERS)
MORTGAGE ELECTRONIC REGISTRATION SYSTEM assigning and transfering the
mortgage and Note over to HSBC BANK USA NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE HOLDER OF NOMURA HOME EQUITY LOAN INC., HOME EQUITY
LOAN TRUST SERIES 2007-1 and is entered into the court records in Miami
Dade County on the date of 7/21/2012, <u>five years after the foreclosure complaint</u>.
In the case: **US Bank vs. Ibanez** , The mortgage assignment, which was
executed in blank, was not recorded until over a year <u>after</u> the foreclosure
process had started. The distressed home owner , challenged the validity of the
foreclosure Arguing that U.S. Bank had no standing to foreclose because it lacked
any evidence of ownership of the mortgage and the loan at the time it started The
foreclosure. Mr. Ibanez <u>won his case in the lower court in 2009 and in 2011
Justice Robert Cordy, Mass. Supreme Judicial court ruling up held U.S. Bank vs.
Ibanez foreclosure ruling.</u> The Court ruling appears rather elementary: you need
To own the mortgage before you can foreclose, **see Mclean vs. JPMorgan.**

    Citing the U.S. Supreme Court 1992 holding in lujan v. defenders of wildlife
That standing is to be determined as of the commencement of the suit the state
court decisions supporting that same conclusion from Oklahoma,Vermont, Maine,
Connecticut, Florida, Mississippi and Nebraska. The Supreme court has made it
clear that the burden of establishing standing rest on the plaintiff according to the
Federal 3.1 Rule, At each stage of the litigation from the initial pleading stage
through summary judgment, and trail the plaintiff must carry the burden.
Standing must exist on the date the complaint is filed and throughout the
litigation, including on appeal by the defendants or in some circumstances by the
court sua sponte. Finally plaintiffs Must demonstrate standing for each claim and
each request and each request For relief.

        In this case it is pretty obvious that HSBC did not have standing at the

5

Time of filing of the complaint because the original Note was not brought forth During the time of the filing of the complaint, on the court docket for this case On the website for Miami Dade county it was seen by plaintiffs that it read that The original Note had been entered into the file on 01/24/2008 but when Plaintiffs went to the court house to veiw the files on a later date no original Note could be found, but even if they did find the Note after That late date its still to late in violation of the PSA even though the PSA grants the plaintiffs 90 days more to get the Note entered after the closing date it was still not entered into the Trust even then, all existing time had long expired , More over the transaction in dealing with the HSBC BANK USA NA., Trust as being assigned the Note in 7/31/2012 is fraudulant , because they produced an assignment knowing it was to late to enter it into the Trust. this is the Document that they (HSBC BANK) always refer to **on exhibit# A**   and no where Else is there a date or time written or recorded that indicated or proven that HSBC BANK USA been assigned or had been transferred possession or sold said Property to HSBC BANK no date was given except on the assignment date of 7/31/2012, now according to the SEC Bloomberg website defendants reserched The property trust, HSBC BANK USA NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF NOMURA HOME EQUITY LOAN INC., HOME EQUITY LOAN TRUST, SERIES 2007-1, and their was a Prospectus Supplement to prospectus dated 4/18/2006 that contained Asset-Backed Certificates, series 2007-1 **See exhibit# B ,** in which it contains thousands of loans from mortgage Backed securities on the Bloomberg exchange from the same series 2007-1. Plaintiff HSBC BANK USA is the trustee for the Trust, the Trust was formed As a vehicle for purchasing mortgage backed securties. The trust is subjectTo the terms of a Pooling and Servicing Agreement (PSA) . the PSA was signed by the Depositor, Nomura Home Equity Loan INC., by the Servicer, Wells Fargo Bank NA., a national banking association, and by the trustee HSBC BANK USA National Association, a national banking association.

      Section 2.01 subsection 1 of the PSA requires that transfer and assignment of mortgages must be effected by hand delivery, for deposit with the trustee with the original Note endorsed in blank. Section 2.05 of the PSA requires That the Depositor transfer all right, title, interest in the mortgages to the trustee, on behalf of the trust, as of the Closing Date. The closing date as provided in the PSA is January 31, 2007 <u>see pg 6 of prospectus</u> **exhibit # B.** MERS assigned Defendants LoanCity loan to HSBC, as Trustee on 7/31/2012,  approximately 5 years and 6 months after the trust had Closed and about 4 years and 6 months

6

after the final Judgment. <u>Defendants Argue that plaintiff is not in fact the owner or holder of the Note because  Defendants claimed themselves that they  did not have possession of the  Note and mortgage after the trust had closed **in their complaint saying they had were not in possession of  the Note  in violation of the terms of the PSA,  and therefore the acquisition of the Note and mortgage is void,**</u> Many decisioned  the question of whether the plaintiffs in a foreclosure action owns the note and mortgage as if it were a question of standing and governed by CPLR 3211(e)  Citigroup Global Markets Realty Corp. v. Randolph bowling, 25 Misc 3d 1244(A), 906 N.Y.S.2d 778 (Sup. Ct. Kings Cty 2009) Federal Natl. Mtge. Assn. v. Youkelsone, 303 AD2d 546, 546-547 (2d Dept 2003); Nat'l Mtge. Consultants v. Elizaitis, 23 AD3d 630, 631(2d Dept 2005); Wells Fargo Bank, N.A. v. Marchione, 2009 NY Slip op 7624, (2d Dept 2009).

However  defendant's ownership of the Note is not an issue of standing but an Element of its cause of action which it must plead and prove. The term "standing" has been applied to two legally distinct concepts. The first is legal capacity, or authority to sue. The second is whether a party has asserted  a sufficient interest in the outcome of a dispute. Standing and capacity to sue are related, but distinguishable legal concepts.

In a foreclosure case, the Plaintiff must plead and prove as part of its prima facie case that it owns the note and mortgage and has the right to foreclose. *Wells Fargo Bank, NA.,* 80 AD3d 753,915 N.Y.S.2d 569 (2d Dept 2011); *Argent Mtge. Co., LLC v. Mentesana,* 79 AD3d 1079, 915 N.Y.S.2d 591 (2d Dept 2010); *Campaign v Barba~* 23 AD3d 327, 805 NYS2d 86 (2nd Dept 2005).Defendant herein filed a pro se answer containing a general denial, which is a denial of all of Plaintiff's allegations, including the allegation in paragraph **11** that it owns
the note.

CPLR 30 18(b) provides that an affirmative defense is any matter "which if not pleaded would be likely to take the adverse party by surprise" or "would raise issues of fact not appearing on the face of a prior pleading" .

Affirmative defenses are those which posit that the adverse party is not

7

entitled to relief, by reason of excuse or exception, even assuming the truth of the allegations made in the complaint.

"The defendant has the burden of proof of affirmative defenses, which in effect assume the truth of the allegations of the complaint and present new matter in avoidance thereof." 57 NY Jur. 2d Evidence and Witnesses 165.

Defendant's general denial asserts that Plaintiff is not entitled to relief because the facts alleged in the complaint are not true.

In *Hoffstaedter* v. *Lichtenstein,* 203 App.Div. 494, 496, 196 N.Y.S. 577 (1 st Dept 1922), the First Department held that the general denial put the allegations in the plaintiffs complaint in issue. In that case, the defendant executed a note in favor of the plaintiff as a promise to pay for certain goods. When plaintiff brought an action to recover on the note. the defendant answered with a general denial It went on to state that *"U]t* is elementary that under a general denial a defendant may disprove any fact which the plaintiff is required to prove to establish a prima facie cause of action." Id., at 578.

The Court of Appeals cited *Hoffstaedter* v. *Lichtenstein* in holding that a general denial puts in issue those matters already pled. *Munson* v. *New York Seed Imp. Co-op., Inc., 64* NY2d 985,987,478 N.E.2d 180, 181 (1985).The general denials contained in the answer enable defendant to controvert the facts upon which the plaintiff bases her right to recover. *StrookPlush Company* v. *Talcott,* 129 AD 14,113 NYS 214 (2nd Dept 1908). A general denial is sufficient to challenge all of the allegations in a complaint. *Bodine* v. *White,* 98 NYS 232,233 (App. Term 1906).The Second Department in *Gulati v. Gulati,* 60 AD3d 810, 811-12,876 N.Y.S.2d 430,432-33 (2nd Dept 2009), held it was that where a claim would not take the plaintiff by surprise and "does not raise issues of fact not appearing on the face of the complaint", a denial of the allegations in the plaintiffs complaint was sufficient. It held that where the plaintiff alleged as an element of her prima facie case that the defendant abandoned the marital residence without cause or provocation, and the defendant denied these allegations in his answer, defendant did

8

not need to further allege abandonment as an affirmative defense.

The Fourth Department in *Stevens v. N Lights Associates,* 229 AD2d 1001,645N. Y S .2d 193, 194 (4th Dept 1996), found that a denial by defendant that it was in control of the premises where plaintiff fell did not need to be separately pled as a defense, as the denial of control did not raise any issue of fact which had not already been pled in the complaint. See also *Scully v. Wolff,* 56 Misc. 468, 107 N.Y.S. 181 (App. Term 1907), *Bodine v. White,* 98 N.Y.S. 232 (App. Term 1906).

, Plaintiff's contends that Defendant HSBC Bank USA N.A. was not entitled to summary judgment as it does not own the note and mortgage, because the purported transfer to HSBC Bank N.A.was void as it violated the terms of the PSA which governs acquisitions by the Trust.

The Defendant in this case is Trustee of an asset backed certificate trust. The trust acquires mortgages, pools them and then issues securities secured or backed by the mortgages it holds.The investors receive interest or principle. or both, from the mortgages assigned to those specific securities or obligations.

The manner in which the trust acquires the mortgages, issues the securities and pays the income from the mortgages to investors, is governed by the trust's pooling and servicing agreement (PSA).

The Plaintiff trust is organized as a Real Estate Mortgage Investment conduit (REMIC). As a REMIC, the trust's investors receive significant tax benefits, but to receive those benefits, the trust must comply with the US Treasury regulations governing REMICS. 26 USCA §860-D-1. The terms of the PSA require that the trust does not operate or take any action that would jeopardize its REMIC status. Section 9.01(f) of the PSA.

<u>Article 9 of the PSA, section 9.01 (b) provides that the closing date is designated as the "start up day" of each REMIC, and lists the closing date as January 31, 2007. Pursuant to 26 USCA §860-G-(b )(9), the "start up day" of a REMIC is the day upon which the REMIC issues all of its regular and residual interests.</u>

9

<u>The PSA specifically requires the Depositor to have transferred all of the interest in the mortgage notes to the Trustee on behalf of the trust as of the closing date. PSA Article II, Section 2.05(iii)</u>

Plaintiff's asserts that the transfer of the note herein is void because the note was acquired after the closing date in violation of the terms of the PSA.

**<u>Mere recital of assignment, holding or receipt of an asset is insufficient to transfer an asset to a trust. The grantor must actually transfer the asset. EPTL § 7 -1.18.</u>**

<u>The assignment of the note and the mortgage which affected the transfer was dated July 31, 2012, however, pursuant to the terms of the PSA the trust closed on January 31, 2007</u>

Section 9.02 of the PSA specifically prohibits the acquisition of any asset for a REMIC part of the fund after the closing date unless the party permitting the acquisition and the NIMS (net interest margin securities) Insurer have received an Opinion letter from counsel, at the party's expense, that the acceptance of the asset will not affect the REMIC's status. No such letter has been provided to show compliance with the requirements of the Defendants. has provided no evidence that the trustee had authority to acquire the note and mortgage herein after the trust had closed .

 Since the trustee acquired the subject note and mortgage after the closing date. the trustee's act in acquiring them exceeded its authority and violated the terms of the trust.The acquisition of a mortgage after 90 days is not a mere technicality but a material violation of the trust's terms, which jeopardizes the trust's REMIC status.

Section 9.01(f) of the PSA provides that neither the Trustee, the Servicer or Holder of the Certificates shall cause any REMIC formed under the PSA, by action or omission, to endanger the status of the REMIC or cause any imposition of tax upon the REMIC.

10

Since the trust was organized as a REMIC, the investors received certain tax benefits on the income that passed through the trust to them. Section 26 U.S.C.A.§ 860D(a)( 4) Defines a REMIC as an entity that as of the close of the 3rd month beginning after the startup day and at all times thereafter, substantially all of the assets of which consist of qualified mortgages and permitted investments.

Section 26 U.S.C.A. § 860G (a)(3)(i,ii) defines a qualified mortgage as

(A) any obligation (including any participation or certificate of beneficial ownership therein) which is principally secured by an interest in real property and which (I) is transferred to the REMIC on the startup day in exchange for regular or residual interests in the REMIC,

(ii) is purchased by the REMIC within the 3-month period beginning on the startup day if, except as provided in regulations, such purchase is pursuant to a fixed-price contract in effect on the startup day.

Thus to qualify for the REMIC tax benefits, the mortgages upon which the securities are based must be acquired by the Trust within three months of its start up date.

While section 26 U.S.C.A. § 860D(a)(4) permits a REMIC to contain some portion of non qualified mortgages, it is unclear how many unqualified mortgages are permitted without losing tax status. It is clear, however, that the late acquisition violates the terms of the PSA.

Under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void. EPTL §7-2.4. Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void.

*Conveyance from the Depositor to the Trust*

The Trustee violated the terms of the trust by acquiring the note directly from the sponsor's successor in interest rather than from the Depositor, Nomura Home Equity Loan Inc. as required by the PSA.

In Article II, section 2.01 Conveyance of Mortgage Loans, the PSA requires that the Depositor deliver and deposit with the Trustee the original note, the original mortgage and an original assignment. The Trustee is then obligated to provide to the Depositor an acknowledgment of receipt of the assets before the closing date. PSA Article II, Section 2.01.

The rationale behind this requirement is to provide at least two intermediate levels of transfer to ensure the assets are protected from the possible bankruptcy by the originator which permits the security to be provided with the rating required for the securitization to be saleable. *Deconstructing the Black Magic of Securitized Trusts,* Roy D. Oppenheim Jacquelyn

K. Trask-Rahn 41 Stetson L. Rev. 745 Stetson Law Review (Spring 2012).

Here the note and mortgage were purportedly assigned from LoanCity to HSBC Bank. U.S.A. N.A. without having been transferred to, and then from, the Depositor.

The assignment of the note and mortgage from LoanCity rather than from the Depositor, Nomura Home Equity Loan Inc.,violates section 2.01 of the PSA which requires that the Depositor deliver to and deposit the original note, mortgage and assignments to the Trustee.

<u>The assignment of the Defendant's note and mortgage, having not been assigned from the Depositor to the Trust, is therefore void as in being in contravention of the PSA. The evidence submitted by Defendant that the note was acquired after the closing date and that assignment was not made by the Depositor, is sufficient to raise questions of fact as to whether the Defendant owns the note and</u> mortgage.

## SECOND CAUSE OF ACTION: BANKRUPTCY STAY VIOLATION

On July16, 2015 Albertelli Law Firm representing HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR NOMURA HOME EQUITY LOAN INC. ASSET BACKED CERTIFICATES, SERIES 2007-1, sent out Notices for a hearing on Kurt Marin's objection to sale, the hearing was set to be On 08/12/2015 at 9:am **see exhibit #1** Appellants showed up to the hearing but Albertelli Law Firms Attorneys never show up even though they called for the Hearing them selves , they never showed up, another hearing was set for 10/21/15 **see exb#(1A) pages 1-6** in which the court only put in half of the objection to sale that was entered in on 08/12/2015 when HSBC Bank USA did not show up because they did not want to answer the questions in that first hearing which is shown on **exhibit # 2bpg's 3b, 4b,5b,6b,&7b.** because the state court did not allow the first objection to sale that had been amended for the hearing and already filed in court by the defendants the defendants were not given a fair hearing and plaintiffs never answered the most important questions in the hearing which both plaintiffs and defendants showed up, the Judge Barbara Areces denied the objection to sale, and even though owner Maurice Symonette Had filed Bankruptcy to protect his home **se e exhibit#1C&2C,** she denied his bankruptcy And should have let the bankruptcy Judge over see the matter first, see 11U.S.§ 362(a)(3), 11U.S.C. § 362(h)(K), 11U.S.C.§362(c), 11U.S.§362 (1)(2)(3)(4)(5)

13

(6)(7). The same went for part owner Clyde Ward, who filed bankruptcy to stop the sale 02/18/15 at the same property 10290 SW 58th St. Mia. Fl. Again was denied his bankruptcy should have been looked at by bankruptcy Judge first **See exhibit#1D**, and copy of quitclaim deed **see exhibit # 1E.**

### THIRD CAUSE OF ACTION: FILES DESTROYED BY CLERK

On July 25, 2007 defendants property went into foreclosure, defendants Were unaware at first that they were in foreclosure because they were never served, defendants discovered some months later in the early part of 2008 around Feb. or March, and entered a ( QWR) Qualified written request for the original records and documents of the said property other similar request were sent to plaintiffs asking for proof that plaintiffs had that they owned the Note and records to the property nothing was ever sent, then one day while defendants were in the county court house in downtown miami, defendants tried to order the Foreclosure files to this case: 2007-023509CA23, the clerk informed us that they Had destroyed the files and they were no longer in existance **see exhibit**  , we were stunned that the court had destroyed the files as the clerk said they were destroyed on Jan. 1,2014 we were never Notified in any manner that this could happen, we're begining an appeal against Plaintiffs in Nov. 2015 and had no way

14

of obtaining files to the property, so we were starting our appeal now ineffectivly with little foreclosure information the court clerk Had helped the Banks by Destroying the records before we could start our appeal, the said property had not Been sold and was still in possession of the defendants , defendants should have Had access to those files and because defendants did not they were at a Disadvantge and ended up losing the appeal for lack of important information. Fl. Statue 119.11 (4) says " upon service of a complaint, counterclaim, or cross-cl Aim in a civil action brought to enforce the provisions of this chapter, the custodian of the public record that is the subject matter of such civil action shall not Transfer, custody, alter, destroy or otherwise dispose of the public record sought to be inspected and examined, notwithstanding the applicability of an exemption orThe assertion that the requested record is not a public record subject to the inspection and examination under s. 119.07(1), until the court directs otherwise. The person who has custody of such public record may, however, at anytime permit inspection of the requested record as provided in s.119.07(1) and other provisions of law.

## PRAYER

WHEREFORE, Plaintiff requests judgment as follows:

1.That this court issue an Order to show Cause.

15

2. That the attempted foreclosure if the Property be declared illegal and that defendants be forever enjoined and restrained from selling the Property or attempting to sell it or causing it to be sold, either under power of sale pursuant to trust deed or by foreclosure action and from posting, publishing or recording any notice of default of foreclosure sale contrary to state or federal law.

3. That Defendant's make restitution to Plaintiffs according to proof.

4. For a judgment determining that Plaintiffs are the owners in fee simple of The Property against the adverse claims of Defendants and that they have no interest in the property adverse to Plaintiffs

6. For damages in an amount of $5,000,000.00.

7. For cost of suit and reasonable attorney fees.

8. For any and all other and further relief that may be just in this matter.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS SENT BY US MAIL TO:

RESPECTFULLY SUBMITTED

16

_____                    _____
Maurice Symonete                             KURT MARIN
10290 SW 58TH ST.                 10290 SW 58TH ST.
MIAMI, FL.33173                              MIAMI, FL. 33173

17